**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
——————————————————————————

**JAMES BASS,**

       **Plaintiff,**

  **v.**                             **No. 5:19-cv-566**
                                          **(TJM/ATB)**

**SYRACUSE UNIVERSITY,**

       **Defendant.**
——————————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

Before the Court is Plaintiff James Bass's motion for partial summary judgment in

this case concerning Plaintiff's claims of copyright infringement.  See dkt. # 17. The parties

have briefed the issues, and the Court has determined to decide the matter without oral

argument.

**I.    Background**

This case concerns claims by Plaintiff James Bass that Defendant Syracuse

University violated his copyright in photographs that Bass took of Syracuse University men's

basketball players.   Bass is a professional photographer who licensed his work for a fee.

Plaintiff's Statement of Material Facts ("Plaintiff's Statement"), dkt. # 20, at ¶ 1.[1]  He

_____

[1]Both parties filed statements of material facts with citations to the record as
required by Local Rule 7.1(a)(3).  The Court will cite to the Plaintiff's statement for facts
(continued...)

discontinued his business in 2018.  Defendant's Response to Plaintiff's Statement of

Material Facts ("Defendant's Resposne"), dkt. # 23-5, at ¶ 1.[2]  Defendant Syracuse

University is a private university located in Syracuse, New York.  Plaintiff's Statement at ¶ 2.

Plaintiff photographed members of the Syracuse University men's basketball team on

September 21, 2018.  Id. at ¶ 3.  Among the team members he photographed were Oshae

Brissett and Tyus Battle.  Id.

The parties disagree about the nature of the ownership of the photographs that

Plaintiff took on that occasion, including the photographs of Brissett and Battle.  Compare

Plaintiff's Statement at ¶ 4, Defendant's Response at ¶ 4.  Plaintiff claims that he "has at all

times been the sole owner of all right, title and interest in" those photographs, as well as the

copyright to them.  Plaintiff's Statement at ¶ 4.  Defendant disputes that Plaintiff solely owns

the photographs "to the extent that the statement is intended to suggest that the University

does not have a license to" them. Defendant's Response at ¶ 4.  Defendant claims to

possess such a license.  Id.

Plaintiff contends that he only licensed the photographs to Syracuse "for certain

uses."  Plaintiff's Statement at ¶ 5.  He contends that the license he provided Syracuse

covered only the University's "own social media accounts," but that the license did not

include "commercial billboards, third-party cross promotion purposes or any other

commercial purpose."  Id.  The University agrees that Plaintiff licensed his photographs to

---

[1](...continued)
which are uncontested and note where the parties disagree.

[2]Defendant cites to a portion of Plaintiff's Deposition where he admits that he no longer works as a photographer.  The Court has examined that testimony and agrees that this fact cannot be contested.

Syracuse, but asserts that "the license provided to the University by the Plaintiff was not restricted in scope." Defendant's Response at ¶ 5. Plaintiff in particular argues that he never licensed the photographs for use on billboards. Plaintiff's Statement at ¶ 6. Defendant response that the license Plaintiff provided "was not restricted in scope." Defendant's Response at ¶ 6.

The parties agree that they never entered into any written contract. Plaintiff's Statement at ¶ 7. Based on his oral communications with a Syracuse University employee, however, Plaintiff understood that the license he provided was "for use on Defendant's social media accounts in exchange for a flat fee." Id. at ¶ 8. Plaintiff claims that he did not agree that Defendant could use his photographs "for commercial purposes, such as on billboards, third-party cross promotion purposes or any other commercial purpose." Id. at ¶ 9. Defendant disputes these claims; the license the Plaintiff provided, Syracuse claims, contained no restrictions on such use or "in scope." Defendant's Response at ¶¶ 8-9.

Plaintiff alleges that Defendant violated the agreement on two occasions. The parties agree that Syracuse used the photographs of Brissett and Battle on a billboard in November 2018. Compare Plaintiff's Statement at ¶ 10 and Defendant's Response at ¶ 10. Plaintiff alleges that this use of the photographs exceeded the scope of the license he provided. Plaintiff's Statement at ¶ 10. Defendant denies that this use exceeded the scope of the license. Defendant's Response at ¶ 10. Plaintiff alleges that he became aware of the misuse of his photographs on the billboard in November 2018 and discovered in March 2019 that Defendant had used his photographs for "third-party cross-promotional materials." Plaintiff's Statement at ¶ 11. Plaintiff contends that the license did not permit such uses and that he did not provide any form of consent to use his images in the way Syracuse did.

3

Id. at ¶ 12.  Defendant contends that the license permitted such uses.  Defendant's Response at ¶ 12.

Plaintiff's counsel, Liebowitz Law Firm, PLLC, has a routine practice of registering photographs with the United States Copyright Office for the firm's clients.  Plaintiff's Statement at ¶ 13.  Plaintiff authorized the firm to register his copyrights.  Id. at ¶ 14.  Some party or entity[3] registered the photographs with the Copyright Office and those photographs received registration number.  Id. at ¶¶ 15-16.  Plaintiff received a registration for his copyright of the picture of Brissett within five years of when he first published the photograph.  Id. at ¶ 17.

Defendant has provided the Court with additional statements of material facts, to which the Plaintiff has responded.  See Defendant's Responsive Statement of Material Facts ("Defendant's Statement"), which continues on from Defendant's Response; Plaintiff's Response to Defendant's Counter-Statement of Facts ("Plaintiff's Response"), dkt. # 24-1. Defendant states that Syracuse has a "regular practice" of hiring "external photographers" to take pictures of intercollegiate athletic teams.  Defendant's Statement at ¶ 1.  The University uses such photographs "for internal and external promotional use."  Id.  Syracuse alleges that the University "obtains the exclusive rights to the photographs" from such sessions.  Id.

Defendant alleges that Plaintiff agreed to conduct the September 21, 2018 photo

---

[3]Plaintiff here demonstrates why writing teachers frequently decry use of the passive voice.  Plaintiff's statement represents that "[t]he photograph depicting Oshae Brissett (Player #11) was registered with the U.S. Copyright Office ("USCO"), was deposited with the USCO under content title '09.21.18_cuse_mbb_082.jpg' and was given registration number no. [sic] VA 2-144-186 (the '186 Registration')."  Plaintiff's Statement at ¶ 15.  While the Court could guess at who sought the copyright from the context and can assume that the Copyright Office issued the registration, Plaintiff's statement does not provide this information.

session "in exchange for a $450 payment," which was Syracuse's "standard rate" for such work.  Id. at ¶ 2.  Plaintiff received $450 as payment from the University, as well as two tickets to a men's basketball game against the University of Pittsburgh.  Id. at ¶¶ 3-4. Plaintiff admits that he "does not like to conduct oral negotiations or enter into verbal agreements because he 'want[s] there to be a paper trail so that nothing is minsconstrued or misunderstood.'"  Id. at ¶ 5.  Still, he did not provide, request, or sign a written agreement with the University regarding the photographs.  Id. at ¶ 6.

Plaintiff did speak once with Jordan Kligerman, a University employee, regarding the photo session.  Id. at ¶ 7.  Kligerman claims that he told Defendant the purpose of the September 21, 2018 photography event, and explained that the University would use the photographs for a variety of purposes, "including . . . social media postings, tickets, programs, posters, billboards, in game visuals, and other promotional purposes."  Id. at ¶ 8. Plaintiff denies that he agreed to such a spectrum of uses, contending instead that he "limited the scope of the license to use of the Photographs on Defendant's social media accounts."  Plaintiff's Response at ¶ 8.  Kligerman claims that Plaintiff raised no limitations on the use of the photographs during their conversation; Plaintiff maintains that he limited use to social media accounts.  Defendant's Statement at ¶ 9; Plaintiff's Response at ¶ 9. Plaintiff offers the same response to Kilgerman's claim that the two exchanged text messages in which Plaintiff did not express any desire to limit use of the photographs. Defendant's Statement at ¶ 10; Plaintiff's Response at ¶ 10.  Plaintiff also claims that he expressed a desire to limit use of the photographs to social media during discussions with Kligerman and other University representatives at the photo shoot.  Defendant's Statement at ¶ 12; Plaintiff's Response at ¶ 12.  Similarly, he maintains that his license was limited to

social media use, even though Defendant claims that Plaintiff never had any specific

conversations with anyone at Syracuse related to the breadth of the license he had

provided.  Defendant's Statement at ¶ 13; Plaintiff's Response at ¶ 13.  He denies he ever

stated the limitations on usage he now claims.  Defendant's Statement at ¶ 14; Plaintiff's

Response at ¶ 14. Plaintiff admits that he did not express any desire to limit use in email

exchanges he had with Kligerman and others from the University.  Defendant's Statement

at ¶ 11; Plaintiff's Response at ¶ 11.

When the September 21, 2018 photo shoot ended, Plaintiff provided Syracuse with a

memory card.  Defendant's Statement at ¶ 15.  The card contained around 900 images,

which the University copied and then returned the card to the Plaintiff.  Id.  The parties

disagree about whether they had agreed to any restrictions on how the Defendant used the

images.  Defendant's Statement at ¶ 16; Plaintiff's Statement at ¶ 16.  The University used

the images on a billboard and on social media postings.  Defendant's Statement at ¶ 17.

The billboard where the images appeared was located on Interstate 81, near the University.

Id. at ¶ 18.  The billboard was in place from October 15, 2018 to January 15, 2019.  Id.

After Plaintiff first learned of the billboard on November 28, 2018, he sent Kligerman

an email stating, in part, "I've been seeing the photos all over, even on a billboard next to I-

81 if I'm not mistaken."  Id. at ¶¶ 19-20.  Plaintiff did not allege at that time that the billboard

represented a violation of the parties' agreement about use of the photographs.  Id. at ¶ 21.

He made no such allegation until March 13, 2019, when he emailed Kligerman to complain

that the University had used certain images on an Instagram post and alleged that "I never

signed a release or agreement with the university granting them any sort of usage rights."

Id. at ¶ 24.  The parties dispute whether Plaintiff had ever before asserted any limits on the

6

use of the photographs.  Compare Defendant's Statement at ¶¶ 26-27 with Plaintiff's Response at ¶¶ 26-27.  Plaintiff continues to claim that he had limited the license to social media uses.  Plaintiff's Response at ¶¶ 26-27.  He also contends that he limited the license so that Defendant could not include the photographs as part of "a commercial endeavor" on social media.[4]  Id. at ¶ 32.  He admits, however, that he never told anyone at Syracuse that they could not make this use of the photographs.  Id. at ¶ 33.  He also admits that he first asserted a copyright claim on May 13, 2019, when he filed his Complaint in this matter.  Id. at ¶ 28.  Plaintiff further admits that he licensed the use of the images on Twitter, Instagram, and Facebook.  Id. at ¶ 31.

Plaintiff filed a one-count Complaint in this action on May 13, 2019.  See dkt. # 1.  That count raises a copyright infringement claim pursuant to 17 U.S.C. §§ 106 and 501.  Plaintiff alleges that Defendant willfully violated his copyright in the photographs by displaying them in places other than social media and seeks compensatory and punitive damages.  At the close of discovery, Plaintiff filed the instant motion.  The parties then briefed the issues, bringing the case to its present posture.

## II.    Legal Standard

Plaintiff has filed a motion for partial summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R.

---

[4]Plaintiff complained that Syracuse has permitted another business to place its logo on his photographs.

CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III.   Analysis

Plaintiff seeks summary judgment on liability as to his copyright infringement claim. He also appears to seek dismissal of the affirmative defenses the Defendant has asserted. The Court will first address the summary judgment motion and then examine Plaintiff's arguments with respect to affirmative defenses.

### A.   Copyright Infringement

Plaintiff's claim is for copyright infringement.  "'Copyright infringement is established

when the owner of a valid copyright demonstrates unauthorized copying.'" Castle Rock

Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 137 (2d Cir. 1998) (quoting Repp v.

Webber, 132 F.3d 882, 889 (2d Cir. 1991)).  A "plaintiff must show: (i) ownership of a valid

copyright; and (ii) unauthorized copying of the copyrighted work."  Jorgensen v. Epic/Sony

Records, 351 F.3d 46, 51 (2d Cir. 2003) (quoting Castle Rock, 150 F.3d at 137).  "A

certification of registration from the United States Register of Copyrights constitutes *prima*

*facie* evidence of the valid ownership of a copyright."  Id.  To prove that a defendant copied

the material in question without authorization "a plaintiff must show both that his work was

'actually copied' and that the portion copied amounts to an 'improper or unlawful

appropriation.'"  Id.  (quoting Castle Rock, 150 F.3d at 137).  Plaintiff contends that he has a

copyright of the photographs in question, and that the Defendant copied that material

without authorization when Syracuse used the images on a billboard.

Defendant responds that the University's use of the photographs was not without

authorization.  Defendant argues that Plaintiff did not place any restrictions on the use of

the photographs, and did not object to their use on the billboard until months after he first

saw the billboard with the photographs on them.  Even if Plaintiff did place restrictions on

the use of the photographs, Plaintiff's failure to object to this use until months after he saw

the billboard, Defendant claims, is part of a pattern of conduct that could be interpreted as

an implied license.  Defendant therefore insists that questions of fact exist on this claim

precluding summary judgment.

The issue here is whether a reasonable juror could conclude that Plaintiff authorized

the use of the photographs in the way that the University claims he did.  If a jury could make

such a finding, then Defendant could prevail on the copyright claim and the Court must deny

9

Plaintiff's motion.  The parties agree that some sort of license existed, and Plaintiff would

have no claim if he authorized the use he now complained of.  As explained, he insists that

the license covered only use on social media.  If that were uncontested, then he would be

entitled to summary judgment, since "'if a license is limited in scope and the lincensee acts

outside the scope, the licensor can bring an action for copyright infringement.'" Sohm v.

Scholastic, Inc., 959 F.3d 39, 46 (2d Cir. 2020) (quoting BroadVision, Inc. v. Med. Protective

Co., No. 08-cv-1478, 2010 U.S. Dist. LEXIS 131106, 2010 WL 5158129, at *3 (S.D.N.Y.

Nov. 23, 2010)(internal quotation omitted)).

The existence of that oral agreement is contested, however, and a reasonable juror

could conclude that Defendant's use was authorized based on the evidence in this case.

As detailed above, Plaintiff admits that the parties have no written contract that specifies

permitted and proscribed uses.  Plaintiff instead relies on an oral agreement he contends

that he had with a representative of the Defendant.  That representative disputes Plaintiff's

description of their agreement.  A jury will have to decide which version to believe, and a

question of fact exists as to the nature of the agreement.  Summary judgment is not

available to the Plaintiff on this basis.

Moreover, Defendant points out that evidence exists by which a jury could conclude

that Plaintiff, even after he was aware of the allegedly infringing billboard, neither objected

to that use or engaged in any behavior by which Syracuse would have known that the

University had violated their alleged agreement.  Plaintiff did not complain of the use until

many months after he became aware of the billboard, even though he contacted the

University about the photographs (and billbaord) months before his legal complaint, where

he first raised the issue.  Courts in this Circuit have found that "[u]nder section 204 of the

Copyright Act, a grant of an exclusive license must be in writing, but . . . 'a nonexclusive license may be granted orally, or may even be implied from conduct.'" Psihoyos v. Peason Educ., Inc., 855 F.Supp.2d 103, 119 (S.D.N.Y. 2012) (qutoing Keane Dealer Servs., Inc. v. Hartz, 968 F.Supp. 944, 947 (S.D.N.Y. 1997); see also Graham v. James, 144 F.3d 229, 235 (2d Cir. 1998) ("Under federal law, 'nonexclusive licenses may . . . be granted orally, or may even be implied from conduct.'") (quoting Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT § 10.03[A][7], at 10-43). A reasonable juror could conclude that Plaintiff's conduct implied that he had granted permission for the Defendant to use his photographs on the billboard; instead of taking an opportunity to object to that use, Plaintiff mentioned the use approvingly to Syracuse administrators.  The motion for summary judgment will therefore be denied.

### B.    Affirmative Defenses

Plaintiff also seeks summary judgment on affirmative defenses that Defendant raised in responding to the Complaint.[5]  The Court will address each motion in turn.  As a general

---

[5]Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense" and lists particular defenses that must be pled. FED. R. CIV. P. 8(c)(1).  Commentators conclude that this Rule appeared in the Federal Rules of Civil Procedure because traditional pleading rules had required a defendant to choose between denying the plaintiff's allegations or admitting them and then asserting an affirmative defense.  Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1270.  "This imposed election between the pleader's right to deny the allegations in the complaint and the right to interpose other defensive matters has been eliminated by Rule 8(e), which allows alternative and hypothetical pleading, regardless of the allegation's consistency, and permits a defendant to set forth a denial and at the same time assert one of the defenses enumerated in Rule 8(c)."  Id.  The Court is aware that the usual practice in answering a complaint is for the defendant to assert, in boilerplate fashion, every conceivable affirmative defense, so as to avoid waiver.  A defendant will then assert such defenses as apropriate at trial or in a motion for summary judgment.  Such defenses, however, do not typically otherwise become involved in motion practice.

(continued...)

11

matter, a defendant has the burden of proving an affirmative defense.  Hubbs v. Suffolk

Cnty. Sheriff's Dep't., 788 F.3d 54, 59 (2d Cir. 2015)

### i.     Failure to State a Claim

Plaintiff first seeks dismissal of Plaintiff's affirmative defense of "failure to state a

claim upon which relief can be granted."  Plaintiff contends that there is no evidence to

support Defendant's assertion that his pleading failed to state a claim upon which relief

could be granted.  Both parties cite the familiar Rule 12(b)(6) standard on a motion to

dismiss.  Under this standard, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009)  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting

Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court finds it unlikely that this will become an issue, since the case has

advanced beyond the pleading stage.  That is also why seeking to dismiss the affirmative

defense is largely a waste of the Court's and the Defendant's time.  In any case, the Court

finds that, if a jury finds that Plaintiff has failed to prove that he restricted the license the

way he claims he did, the Defendant's affirmative defense would be borne out.  The Court

will therefore deny the motion in this respect.

### ii.     Waiver

---

[5](...continued)
The Court is thankful that such is the usual approach, since evaluating motions to dismiss
defenses that likely will be either contested and suitable for trial or irrelevant and unraised
by the defendant is a waste of judicial resources.  No rule appears to prohibit the Plaintiff
from seeking summary judgment on the affirmative defenses, however, and the Court will
therefore address the motion in this respect.

Plaintiff also argues that the Court should dismiss the affirmative defense of waiver. He contends that "no reasonable trier of fact can conclude that Bass manifested an intent to intentionally and knowingly relinquish his copyright to the Photographs." "To establish waiver, it is necessary to show that there has been an 'intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.'" Airco Alloys Div. Airco Inc. v. Niagara Mohawk Pwer, 76 A.D.2d 68, 81 (4th Dept. 1980). The evidence discussed above, however, indicates that evidence exists to support a claim that, even if Plaintiff and Defendant actually made an oral agreement to restrict use of the photographs, Defendant waived that right by his response to the existence of the billboard. Summary judgment on that issue will be denied.

### iii.    Equitable Estoppel

Plaintiff next claims no facts exist to support Defendant's equitable estoppel affirmative defense. His entire argument is "there is no evidence that Bass made any misrepresentations to Defendant, nor is there evidence that Defendant reasonably relied on Defendant's statements." Defendant responds that the evidence in this case shows that Plaintiff did nothing to inform the University that the billboard exceeded the license that he had provided until he sued them, gave them no reason to believe that Syracuse's use of the photographs violated the agreement, and that the University relied on this silence only to be sued.

Equitable estoppel applies "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Associates, PC, 274 F.3d

13

706, 725 (2d Cir. 2001).  "[A] party may be estopped from pursuing a claim or defense where 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) the other party reasonably relies on it; 3) to her detriment."  Id.  A copyright defendant can use equitable estoppel when "1) the plaintiff had knowledge of defendant's infringing acts, 2) the plaintiff either intended that defendant rely on his acts or omissions or acted or failed to act in such a manner that defendant had a right to believe that it was intended to rely on plaintiff's conduct, 3) the defendant was ignorant of the true facts, and 4) the defendant relied on plaintiff's conduct to its detriment."  Dallal v. New York Times Co., 2006 U.S. App. LEXIS 5171, *4 (2d Cir. Feb. 17, 2006).

Here, the evidence described above shows that a reasonable juror could conclude that Plaintiff should be equitably estopped from asserting a copyright claim.  He knew of the alleged infringement for months and did not complain, and this caused Defendant to keep the billboard up for months without knowledge that the billboard could be a source of infringement.  Plaintiff also sent emails where he appeared pleased that the images were displayed to the public.  These emails could have convinced the University to continue to display the images, thinking that Plaintiff agreed they should be shown in that form.  The Court will deny the motion in this respect as well.

### iv.    Laches

Plaintiff next seeks dismissal of Defendant's laches affirmative defense.  Defendant relates that it does not intend to raise laches as a defense.  The Court will therefore grant the motion as unopposed in this respect.

###### v.    Ratification

Plaintiff next seeks judgment on Defendant's ratification affirmative defense.  In New York, "ratification is the affirmance by a party of a prior act that did not bind it at the time but that was done or purportedly done on its account."  Chemical Bank v. Affiliated FM Ins. Co., 169 F.3d 121, 128 (2d Cir. 1999).  "Ratification 'must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language.'"  Id. (quoting Holm v. C.M.P. Sheet Metal, Inc., 89 A.D. 2d 229, 455 (App. Div. 1982)).

Plaintiff's argument in support of his motion is: "there is no evidence that Bass ratified Defendant's unlawful conduct as there is no evidence to suggest that Bass mainfested an intent to adopt Defendant's unauthorized use of the Photographs on the commercial billboard."  Plaintiff is wrong that no reasonable juror could see Plaintiff as acting as if he approved of the Billboard's use of his photographs, which was the allegedly infringing conduct.  That evidence has been explained above.  The motion will be denied in this respect as well.

## IV.    CONCLUSION

For the reasons stated above, the Plaintiff's motion for partial summary judgment, dkt. # 17 is hereby GRANTED in part and DENIED in part, as follows:

1.    The motion is GRANTED with respect to Defendant's affirmative defense of laches, and that defense is dismissed from the case;

2.    The motion is DENIED in all other respects.

**IT IS SO ORDERED.**

Dated: August 24, 2020

Thomas J. McAvoy
Senior, U.S. District Judge